No. 20-55295

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

CARLY LEMMON, *ET AL.*,

*Plaintiffs-Appellants*,

v.

SNAP INC.,

*Defendant-Appellee*.

*On Appeal from the United States District Court*
*for the Central District of California, Case No. 2:19-cv-04504-MWF-KS*
*The Honorable Michael W. Fitzgerald, United States District Judge*

## ANSWERING BRIEF OF DEFENDANT-APPELLEE SNAP INC.

JONATHAN H. BLAVIN
ROSEMARIE T. RING
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, California 94105
(415) 512-4000
Jonathan.Blavin@mto.com
Rose.Ring@mto.com

JOHN B. MAJOR
ANNE K. CONLEY
MUNGER, TOLLES & OLSON LLP
350 S. Grand Ave., 50th Floor
Los Angeles, California 90071
(213) 683-9100
John.Major@mto.com
Anne.Conley@mto.com

*Counsel for Defendant-Appellee Snap Inc.*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Defendant-Appellee Snap Inc. states the following:

Snap Inc. has no parent corporation, and no publicly held corporation owns 10% or more of its stock.

# <u>TABLE OF CONTENTS</u>

<u>**Page**</u>

INTRODUCTION ................................................................. 1

STATEMENT OF JURISDICTION ................................... 5

STATEMENT OF THE ISSUES ...................................... 5

STATUTORY ADDENDUM ............................................ 5

STATEMENT OF THE CASE .......................................... 6

    I.    Factual Background ................................................. 6

        A.    The Snapchat App ............................................. 6

        B.    The Filter ........................................................... 6

        C.    The Accident ....................................................... 9

    II.    Procedural Background ......................................... 10

        A.    The Dismissal of Plaintiffs' Original Complaint ... 10

        B.    The Dismissal of Plaintiffs' Amended Complaint ... 11

SUMMARY OF THE ARGUMENT .................................. 14

STANDARD OF REVIEW ................................................ 18

ARGUMENT ..................................................................... 18

    I.    Plaintiffs' Claim Is Based on Information Provided by Another Information Content Provider Because It Targets the Filter, a Content-Neutral Tool Protected by the CDA ................................................. 20

        A.    The Filter Is a Neutral Tool Protected by the CDA ................................................................ 21

        B.    Plaintiffs Cannot Circumvent the CDA By Targeting the Filter Itself ................................. 26

        C.    The Filter Does Not Render Snap Responsible for Users' Decisions to Publish High-Speed Snaps ... 31

        D.    Plaintiffs' Cited Authority Does Not Undermine the District Court's Sound Decision ................. 34

# TABLE OF CONTENTS
## (Continued)

**Page**

II.   The Remaining Requirements for CDA Immunity Are Met........................................................................ 43

    A.   Snap Is an Interactive Computer Service Provider ...................................................... 43

    B.   Plaintiffs' Claim Treats Snap as a Publisher .............. 44

III.   Plaintiffs' Claim Separately Fails for Lack of Causation .... 47

CONCLUSION ...................................................................... 52

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Abagninin v. AMVAC Chem. Corp.*,
   545 F.3d 733 (9th Cir. 2008) .............................................................. 32

*Airbnb, Inc. v. City & Cnty. of S.F.*,
   217 F. Supp. 3d 1066 (N.D. Cal. 2016) ............................................... 39

*Anthony v. Yahoo Inc.*,
   421 F. Supp. 2d 1257 (N.D. Cal. 2006) ............................................... 39

*Ascend Health Corp. v. Wells*,
   2013 WL 1010589 (E.D.N.C. Mar. 14, 2013) ...................................... 40

*Barnes v. Yahoo!, Inc.*,
   570 F.3d 1096 (9th Cir. 2009) .............................................. 12, passim

*Batzel v. Smith*,
   333 F.3d 1018 (9th Cir. 2003) .............................................................. 44

*Black v. Google Inc.*,
   2010 WL 3222147 (N.D. Cal. Aug. 13, 2010).................................... 30

*Carafano v. Metrosplash.com, Inc.*,
   339 F.3d 1119 (9th Cir. 2003) ................................................ 14, 22, 31

*Doe v. Internet Brands, Inc.*,
   824 F.3d 846 (9th Cir. 2016)................................................... 40, 41, 42

*Doe v. MySpace, Inc.*,
   528 F.3d 413 (5th Cir. 2008) .............................................................. 31

*Dougherty v. City of Covina*,
   654 F.3d 892 (9th Cir. 2011).............................................................. 18

*Durkee v. C.H. Robinson Worldwide, Inc.*,
   765 F. Supp. 2d 742 (W.D.N.C. 2011)........................................... 48, 49

# TABLE OF AUTHORITIES
## (Continued)

**Page(s)**

*Dyroff v. Ultimate Software Grp., Inc.*,
    934 F.3d 1093 (9th Cir. 2019) .................................................. 1, passim

*Fair Hous. Council of San Fernando Valley v.
    Roommates.com, LLC*,
    521 F.3d 1157 (9th Cir. 2008) (en banc) .............................. 19, passim

*FEC v. Toledano*,
    317 F.3d 939 (9th Cir. 2002) ........................................................ 17, 43

*Fields v. Twitter, Inc.*,
    217 F. Supp. 3d 1116 (N.D. Cal. 2016) ............................................... 42

*Force v. Facebook*,
    934 F.3d 53 (2d Cir. 2019) .................................................................. 28

*Fraley v. Facebook, Inc.*,
    830 F. Supp. 2d 785 (N.D. Cal. 2011) ................................................. 39

*Hell's Angels Motorcycle Corp. v. McKinley*,
    360 F.3d 930 (9th Cir. 2004) ........................................................ 18, 47

*Herrick v. Grindr, LLC*,
    306 F. Supp. 3d 579 (S.D.N.Y. 2018) ........................................... 42, 43

*Icon Health & Fitness, Inc. v. Consumer Affairs.com*,
    2017 WL 2728413 (D. Utah June 23, 2017) ....................................... 39

*Jane Doe No. 1 v. Backpage.com, LLC*,
    817 F.3d 12 (1st Cir. 2016) .......................................................... 44, 46

*Jones v. Dirty World Entm't Recordings LLC*,
    755 F.3d 398 (6th Cir. 2014) ............................................................... 33

*Kimzey v. Yelp! Inc.*,
    836 F.3d 1263 (9th Cir. 2016) ................................................... 3, passim

# TABLE OF AUTHORITIES
## (Continued)

**Page(s)**

*La Park La Brea A LLC v. Airbnb, Inc.*,
  285 F. Supp. 3d 1097 (C.D. Cal. 2017) .............................................. 33

*Marshall's Locksmith Service Inc. v. Google, LLC*,
  925 F.3d 1263 (D.C. Cir. 2019) .................................................... 25, 26

*Meador v. Apple, Inc.*,
  911 F.3d 260 (5th Cir. 2018) ....................................................... 47, 49

*Monetary II Ltd. P'ship v. C.I.R.*,
  47 F.3d 342 (9th Cir. 1995) .............................................................. 43

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com Inc.*,
  591 F.3d 250 (4th Cir. 2009) ............................................................ 19

*Opperman v. Path, Inc.*,
  87 F. Supp. 3d 1018 (N.D. Cal. 2014) ............................................... 40

*Perfect 10, Inc. v. CCBill LLC*,
  488 F.3d 1102 (9th Cir. 2007) .......................................................... 19

**STATE CASES**

*Coal. Against Distracted Driving v. Apple, Inc.*,
  2018 WL 2016665 (Cal. Ct. App. May 1, 2018) ........................... 48, 49

*Cobb v. Indian Springs, Inc.*,
  522 S.W.2d 383 (Ark. 1975) ......................................................... 50, 51

*Daniel v. Armslist, LLC*,
  926 N.W.2d 710 (Wis. 2019) ............................................................ 33

*Doe II v. MySpace Inc.*,
  175 Cal. App. 4th 561 (2009) ............................................................ 30

*Estate of Doyle v. Sprint/Nextel Corp.*,
  248 P.3d 947 (Okla. Civ. App. 2010) ........................................... 48, 50

# TABLE OF AUTHORITIES
## (Continued)

**Page(s)**

*Gentry v. eBay, Inc.*,
  99 Cal. App. 4th 816 (2002) ................................................................ 25

*Grossman v. Rockaway Twp.*,
  2019 WL 2649153 (N.J. Super. Ct. June 10, 2019) ............................ 44

*Maynard v. McGee*,
  2019 WL 6216230 (Ga. Super. Ct. Nov. 8, 2019) ........................ 37, 50

*Maynard v. Snapchat, Inc.*,
  816 S.E.2d 77 (Ga. Ct. App. 2018) ....................................... 34, passim

*Modisette v. Apple Inc.*,
  30 Cal. App. 5th 136 (2018) ................................................ 4, 47, 48, 49

*Shafer v. Keeley Ice Cream Co.*,
  234 P. 300 (Utah 1925) .................................................................. 50, 51

*Weirum v. RKO Gen., Inc.*,
  15 Cal. 3d 40 (1975) ...................................................................... 50, 51

*Williams v. Cingular Wireless*,
  809 N.E.2d 473 (Ind. Ct. App. 2004) ............................................ 48, 50

## STATUTES

28 U.S.C. § 1291 ......................................................................................... 5

28 U.S.C. § 1332 ......................................................................................... 5

47 U.S.C. § 230 ................................................................................... 18, 31

# INTRODUCTION

On May 28, 2017, non-party Jason Davis drove faster than 100 m.p.h., lost control of his vehicle, and crashed into a tree, resulting in the tragic death of Davis and his two passengers, Landen Brown and Hunter Morby. Plaintiffs assert that Snap Inc. ("Snap"), developer of the Snapchat application, should be held legally responsible for the accident because, prior to the crash, passenger Brown opened Snapchat on his phone and used its speedometer filter (the "Filter") to publish a photo on Snapchat that showed the vehicle traveling at 123 m.p.h.

The District Court correctly held that Plaintiffs' sole claim of negligence is barred by the federal Communications Decency Act, 47 U.S.C. § 230 ("CDA"). The CDA prevents Internet platforms like Snap from being held liable for providing neutral tools that facilitate the creation and publication of third-party content. Here, the District Court correctly held that the CDA applies because Plaintiffs are seeking to hold Snap liable for exactly that—allowing users to publish "snaps" showing their speeds using the Filter. This Court repeatedly has held that the CDA protects "content-neutral tools used to facilitate communications," like the Filter. *E.g.*, *Dyroff v. Ultimate Software Grp.,*

*Inc.*, 934 F.3d 1093, 1096–98 (9th Cir. 2019), *cert. denied*, 140 S. Ct. 2761 (Mem.) (May 18, 2020).  The District Court, applying that settled principle of CDA law, correctly held that the CDA therefore bars claims based on the Filter, because the Filter is a content-neutral tool.  It "can be utilized for both proper and improper purposes," "can be used at low or high speeds," and "does not require any user to [s]nap a high speed." ER13.  Indeed, Snap expressly "discourage[s]" users from "capturing [their] speed while driving" through real-time warnings to users.  ER13.

Plaintiffs do not meaningfully engage with the District Court's core holding that the CDA applies because the Filter is a "neutral tool" that facilitates third-party communications.  Indeed, even though the District Court's decision rested largely on its determination that the Filter is a neutral tool, Plaintiffs' Opening Brief mentions the term "neutral tools" just once, and it never mentions *Dyroff*, which was central to the District Court's analysis.  Plaintiffs also do not dispute that the Filter is, in fact, a neutral tool because it can be used at low or high speeds and does not require (much less encourage) snaps using the Filter at any speed.  Instead, Plaintiffs offer just two arguments.

*First*, Plaintiffs contend that the CDA does not apply because

- 2 -

their claim targets the Filter itself, which they describe as Snap's content, rather than the publication of any third-party content. But this "effort to circumvent the CDA's protections through 'creative' pleading fails." *Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1266 (9th Cir. 2016). This Court consistently has rejected similar efforts to duck the CDA by attempting to base claims on neutral tools like the Filter. In *Dyroff*, this Court rejected a similar effort to "plead around Section 230 immunity by" targeting "content-neutral tools used to facilitate communications," because such tools "*are not content in and of themselves*" under the CDA. 934 F.3d at 1096–98 (emphasis added).

*Second*, Plaintiffs argue that the Filter at least renders Snap jointly responsible for Brown's snap showing a high speed. But because the Filter is a neutral tool that does not require unlawful content, Snap cannot be deemed responsible for such content and the Filter does not strip Snap of CDA immunity. As the District Court correctly held, the Filter "can be used at low or high speeds, and . . . does not require any user to [s]nap a high speed," or even use the Filter at all, at any speed. ER13. The CDA therefore protects the Filter as a "neutral tool[]" that

does not "require[]" unlawful content and merely "facilitate[s] . . . user-to-user communication." *Dyroff*, 934 F.3d at 1099.

This case thus begins and ends with settled principles of CDA immunity: Plaintiffs' claim attacks the Filter, but the Filter is a neutral tool that facilitates user communications on Snapchat, and under established law, the CDA protects precisely these types of tools from forming the basis of any liability against online platforms. The District Court's judgment should be affirmed.

Even apart from the CDA, the Court can also affirm for an independent reason: lack of causation. The District Court dismissed Plaintiffs' original complaint on that ground, holding that Plaintiffs had not adequately alleged that the Filter caused the accident. ER31. In dismissing the amended complaint on threshold CDA grounds, the District Court did not reach causation, but its causation holding remains sound and provides an independent basis for affirmance.

Plaintiffs cannot establish causation here because—as courts across the country uniformly have held—accidents like this one are "not a result of [technology companies'] conduct"; they are the result of drivers' poor decisions. *Modisette v. Apple Inc.*, 30 Cal. App. 5th 136,

154 (2018) (collecting authorities; Apple not responsible as a matter of law for drivers' misuse of FaceTime application). That principle provides a separate basis for affirming the District Court's dismissal.

Whether because of the CDA or lack of causation, this case was properly dismissed by the District Court, and this Court should affirm.

## STATEMENT OF JURISDICTION

The District Court had jurisdiction under 28 U.S.C. § 1332(a)(1). The District Court granted Snap's motion to dismiss and entered judgment on February 25, 2020. ER15–16. Plaintiffs filed a notice of appeal on March 18, 2020. ER36. This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

1. Whether the District Court correctly dismissed Plaintiffs' negligence claim on CDA grounds because Plaintiffs seek to hold Snap liable for allowing users to publish "snaps" showing high-speeds using the Filter, a neutral tool that facilitates user-to-user communications.

2. Whether Plaintiffs' negligence claim fails on the merits because Plaintiffs cannot establish that the Filter caused the accident.

## STATUTORY ADDENDUM

Section 230 of the Communications Decency Act, 47 U.S.C. § 230,

is attached as an addendum to Plaintiffs' Opening Brief.

## STATEMENT OF THE CASE

### I.   Factual Background[1]

#### A.   The Snapchat App

Snap is the developer of Snapchat, a camera and communications app for mobile phones.  ER103 ¶ 1, ER106 ¶ 24.  Snapchat allows users to communicate with each other by creating and sharing photo and video messages called "snaps."  ER106 ¶¶ 24, 26.  Users can modify a "snap" by adding text, stickers, or a wide array of filters.  ER106 ¶ 24. For example, users can add text captions to a snap, draw on it, or add decorative borders.  They also can add "filters," or visual overlays that sit on top of the snap.  Some filters add a time-stamp of when the snap was taken, others overlay the snap with the location or altitude, and others show the temperature.  ER107 n.8.  No user is required to use any filter.

#### B.   The Filter

At issue here is a speedometer filter that overlays on a photo or video the real-time speed at which a user is travelling when the snap is

---

[1] For purposes of this appeal only, Snap assumes the truth of the facts asserted in Plaintiffs' amended complaint.

taken (the "Filter").  ER106 ¶ 25.  This is a snap using the Filter on an airplane:



Plaintiff does not allege that the Filter performs any function other than displaying real-time speed.  ER103–114.  Plaintiff does not allege, for example, that the Filter tells users to speed up or that the Filter in any way rewards users for posting snaps taken at high speeds. *Id.*  The Filter is not designed for use while driving, or while performing any particular activity; users can use the Filter while, for example, taking a flight, jogging, riding a train, or even sitting still.  ER108 ¶ 38 n.11.

- 7 -

Snap provides several warnings discouraging use of the Filter while driving.[2]  ER141, ER144, ER152.  When a Snapchat user on an iOS device first selects the Filter, the following warning appears:



ER137–138, ER141.  When a user's speed exceeds 15 m.p.h., the user receives another warning: "Don't Snap and drive."  ER138, ER144.  And Snap's Terms of Service state:

> We also care about your safety while using our Services.  So do not use our Services in a way that would distract you from obeying traffic or safety laws.  For example, never Snap and drive.  And never put yourself or others in harm's way just to capture a Snap.

ER152.

---

[2] The District Court took judicial notice of these warnings.  ER8, ER25.

## C.    The Accident

In mid-2017, Jason Davis, Hunter Morby, and Landen Brown were riding in a vehicle in Walworth County, Wisconsin.  ER111 ¶ 63. Davis was the driver; Brown was the front passenger; and Morby was the rear passenger.  ER111 ¶¶ 63–64.  During the ride, Brown opened the Snapchat app on his phone.  ER111 ¶ 66.  Davis then accelerated to "a speed significantly above" the speed limit.  ER112 ¶ 68.  Plaintiffs allege that "[o]ne 'Snap'" captured the car's "speed at 123 miles per hour."  ER112 ¶ 69.  A few minutes later, the car ran off the road, resulting in the deaths of all three young men.[3]  ER112 ¶ 70.

Plaintiffs allege in conclusory fashion that Snap was the cause of the accident because it allowed users to publish snaps using the Filter. For example, they allege that Snap "encouraged and facilitated [Davis, Morby, and Brown's] excessive speeding" because they "were being motivated to drive at excessive speeds because of Snapchat."  ER111 ¶ 67.  Plaintiffs also allege it "is a game for Snap and many of its users"

---

[3] Plaintiffs also claim that the Filter "has been a motivating factor in many other prior and subsequent fatal or near-fatal crashes across the country."  AOB vii; *see also* AOB 5–6.  But Plaintiffs point to a small handful of other accidents—only three over the course of more than five years—relating to an app with several hundred million daily users.

to "share [a] 100-MPH-[s]nap on Snapchat." ER107 ¶ 34. And they claim that Snap "rewards, in unknown, variable, and changing ways, users who consume Snapchat in excessive and dangerous ways." ER106 ¶ 27. Plaintiffs, however, provide no factual support for these conclusory allegations. The District Court rejected the allegations about "rewards" as "too vague and speculative" to be credited. ER31. Plaintiffs do not allege (nor could they) that Snap actually rewards users for posting snaps taken at high speeds (or any speed) using the Filter or directs users in any way to "go faster."

## II.    Procedural Background

### A.    The Dismissal of Plaintiffs' Original Complaint

Plaintiffs, the surviving parents and estates of Morby and Brown, filed a complaint alleging a cause of action for negligence. ER172–183. Plaintiffs claimed Snap was negligent for allowing Snapchat users to publish snaps showing them going at high speeds using the Filter. *Id.*

Snap moved to dismiss. Snap argued that it did not owe Plaintiffs a tort-law duty; that Plaintiffs could not establish causation; and that comparative negligence principles and public policy barred Plaintiffs' claim. ER29. Snap also argued that Plaintiffs' claim was barred by the CDA. ER31.

The District Court dismissed the original complaint with leave to amend. The District Court held that Plaintiffs failed to adequately plead causation because they had not provided "sufficient facts to establish that [Snap] actually encouraged speeding" and thus did not "sufficiently allege[] a causal connection" between the accident and the Filter. ER30–31. The District Court did not rule on Snap's CDA argument at the time, but it identified "the critical issue" for CDA purposes as "whether the Speed Filter should be considered content-neutral or not." ER34. The Court "encouraged [Plaintiffs] to further explain how the Speed Filter itself is encouraging users to speed and snap such content" in their amended complaint. ER34.

## B. The Dismissal of Plaintiffs' Amended Complaint

Plaintiffs then filed their amended complaint (the "Complaint"). Plaintiffs' overarching theory of liability remained the same. ER103–104 ¶¶ 1–11, ER104 ¶¶ 12–16, ER106–107 ¶¶ 28–30, ER108 ¶¶ 35–38, 40. Plaintiffs again alleged that the Filter encourages dangerous driving, but they did not add any new allegations about the functionality of the Filter, nor did they add allegations identifying any conduct by Snap that encourages high-speed or dangerous driving.

Snap once again moved to dismiss.  ER2.  The District Court dismissed the Complaint with prejudice on CDA grounds.  ER15.  The District Court did not address Snap's other arguments.  ER15.

The District Court applied this Court's well-established test for CDA immunity:  "Immunity from liability exists for '(1) [a] provider or user of an interactive computer service (2) whom a plaintiff seeks to treat, under a state law cause of action, as a publisher or speaker (3) of information provided by another information content provider.'"  ER8–9 (quoting *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1100–01 (9th Cir. 2009)).

The District Court observed that "Plaintiffs appear to concede that the first two prongs apply and only challenge the third prong."  ER9.  The District Court held the third prong was met because "high-speed [s]naps" from Snapchat users are "at the crux" of Plaintiffs' claim.  ER13.  Put another way, the District Court held that "central to Plaintiffs' claim is that the users are using the Speed Filter to ***capture and share*** a 100-MPH or higher number [s]nap, i.e., to create user content."  ER13.

The District Court rejected Plaintiffs' argument that the CDA does not apply because their claim involves "[Snap's] own content,

namely the Speed Filter." ER9. The District Court held that it could

not "simply presume that the Speed Filter *is* 'content' because Plaintiffs

allege that it is; rather, the Court must determine whether the Speed

Filter is a 'content-neutral tool' or content.'" ER9. Undertaking that

analysis, the District Court held that the Filter itself is not the

"content" on which Plaintiffs' claim is based. Rather, the Filter "is a

neutral tool, which can be utilized for both proper and improper

purposes." ER13. As the District Court put it,

> The Speed Filter is essentially a speedometer
> tool, which allows [Snap's] users to capture and
> share their speeds with others. The Speed Filter
> can be used at low or high speeds, and [Snap]
> does not require any user to [s]nap a high speed.
> While Plaintiffs allege that some users believe
> that they will be rewarded by recording a 100-
> MPH or faster [s]nap, they do not allege that
> Snap actually rewards its users for doing so. In
> fact, when a user first opens the Speed Filter, a
> warning appears on the app stating 'Please DO
> NOT Snap and drive.'

ER13. Accordingly, the District Court held that Plaintiffs' "claim [was]

barred under the Communications Decency Act because the Speed

Filter is a content neutral tool." ER2.

The District Court denied leave to amend because "the facts relating to CDA immunity are undisputed and any amendment would be futile." ER15. Plaintiffs appealed. ER36.

## SUMMARY OF THE ARGUMENT

This Court should affirm the District Court's well-reasoned decision dismissing Plaintiffs' Complaint on CDA grounds. The CDA applies when a plaintiff seeks to impose liability on (1) "a provider or user of an interactive computer service," (2) for its role "as a publisher or speaker," (3) "of information provided by another information content provider," *i.e.*, third-party users' content. *Barnes*, 570 F.3d at 1100–01.

**I.** The District Court correctly held that the third CDA prong is met. Plaintiffs' claim stems from "information provided by another information content provider" because it is based on Snap facilitating the publication of third-party content.

    **A.** The District Court correctly concluded that the Filter is protected under the CDA because it is a "neutral tool." The CDA provides immunity for claims based on a platform's provision of "neutral tools" that "facilitate[] the expression of information by individual users." *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1124 (9th

- 14 -

Cir. 2003). Put another way, when a platform provides tools that "facilitate . . . user-to-user communication" but do not "require[] users to post specific content," the decision to provide such tools is protected by the CDA. *Dyroff*, 934 F.3d at 1099. Here, the District Court correctly held that the Filter does not "require" the creation of any specific content, because it "can be utilized for both proper and improper purposes," "can be used at low or high speeds," and "does not require any user to [s]nap a high speed." ER13. The District Court therefore correctly held that Plaintiffs' "claim is barred under the [CDA] because the Speed Filter is a content neutral tool." ER2.

> **B.** The District Court also correctly rejected Plaintiffs' effort to circumvent the CDA by arguing that their claim does not "seek[] to hold [Snap] liable for another's content, but rather [Snap's] own content, namely the Speed Filter." ER9. This Court has repeatedly rejected similar efforts to "plead around section 230 immunity" by purporting to target "tools meant to facilitate the communication and content of others." *Dyroff*, 934 F.3d at 1098. Such efforts fail because functions like the Filter are "tools meant to facilitate the communication and content of others. *They are not content in and*

*of themselves*." *Id.* (emphasis added). The District Court therefore correctly rejected Plaintiffs' improper effort to "plead around Section 230 immunity by framing . . . website features as content." *Id.* Were it otherwise, plaintiffs could easily circumvent the CDA by disguising content-based claims as challenges to website tools that facilitate the creation of content.

        **C.**    The District Court also correctly determined that Snap's creation of the Filter does not render Snap jointly responsible for snaps taken and posted using the Filter. The Filter is a "neutral tool" that facilitates the creation of third-party content. It "can be utilized for both proper and improper purposes," "can be used at low or high speeds," and "does not require any user to [s]nap a high speed," or any speed at all. ER13. Snap's allowing users to publish using the Filter therefore is not enough to render Snap responsible for users' misuse of the Filter. Only if Snap "required" users to create unlawful or dangerous content would Snap be responsible for such content, which Plaintiffs do not and cannot allege. *Dyroff*, 934 F.3d at 1099.

        **II.**    The remaining CDA elements, which Plaintiffs "appear[ed] to concede" in the District Court and do not meaningfully address in

their Opening Brief, are also met. ER9. Plaintiffs do not challenge the
District Court's conclusion that they conceded these elements, so they
have doubly waived any argument that they are not met. *See FEC v.
Toledano*, 317 F.3d 939, 948 (9th Cir. 2002) (where party does not
"challenge the district court's conclusion that [an] argument was
waived," this Court "need not address [that argument] on the merits").
Regardless, both elements are plainly satisfied.

     **A.**    Snap is a "provider of an interactive computer service."
Online platforms allowing users to communicate—like Snapchat—are
"interactive computer services."

     **B.**    Plaintiffs' claim seeks to hold Snap liable in its role as
a publisher of third-party content. Snap's alleged negligence arises not
from Snap's creation of the Filter itself, but rather, as the District Court
correctly held, from Snap allowing users to "***capture and share***" snaps
using the Filter. ER13 (emphasis in original). The CDA readily applies
to that sort of publication-focused theory of liability.

    **III.**   Alternatively, this Court can affirm based on Plaintiffs'
failure to adequately allege causation. The District Court dismissed
Plaintiffs' original complaint for lack of causation, and this Court "may

affirm on any basis finding support in the record." *Hell's Angels Motorcycle Corp. v. McKinley*, 360 F.3d 930, 933 (9th Cir. 2004). Here, Plaintiffs have not adequately alleged causation, because, as courts across the country uniformly have held, the driver—rather than a device manufacturer or app creator—is the legal cause of an accident that results from reckless driving, even when a device or app played some conceivable role in the accident.

## STANDARD OF REVIEW

This Court reviews the grant of a motion to dismiss de novo. *Dougherty v. City of Covina*, 654 F.3d 892, 897 (9th Cir. 2011).

## ARGUMENT

The CDA provides Internet platforms with immunity from claims based on facilitating the publication of third-party content. It states that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). It bars liability "under any State or local law that is inconsistent with this section." *Id.* § 230(e)(3). These provisions together "establish broad 'federal immunity to any cause of action that would make service providers liable for information originating with a third-party user.'"

- 18 -

*Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1118 (9th Cir. 2007) (citation omitted); *Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1169 n.24 (9th Cir. 2008) (en banc) ("*Roommates*"). A website "is immune from liability under the CDA" where its challenged "functions" are "content-neutral tools used to facilitate communications." *Dyroff*, 934 F.3d at 1096.

Because the CDA protects websites "not only from 'ultimate liability,' but also from 'having to fight costly and protracted legal battles," courts "aim to resolve the question of § 230 immunity at the earliest possible stage of the case." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) (quoting *Roommates*, 521 F.3d at 1175). Courts routinely apply the CDA on the pleadings. *See Kimzey*, 836 F.3d at 1266.

In applying the CDA, courts "must keep firmly in mind that [the CDA] is an immunity statute." *Roommates*, 521 F.3d at 1174. Accordingly, although there "will always be close cases where a clever lawyer could argue that something the website operator did encouraged" unlawful behavior, "[s]uch close cases . . . must be resolved in favor of immunity." *Id.* A contrary result would "cut the heart out of

section 230 by forcing websites to face death by ten thousand duck-bites, fighting off claims that they promoted or encouraged—or at least tacitly assented to—the illegality of third parties." *Id.*

Courts apply a three-part test to determine CDA immunity, asking whether (1) the defendant is "a provider or user of an interactive computer service," (2) "whom a plaintiff seeks to treat, under a state law cause of action, as a publisher or speaker," (3) "of information provided by another information content provider." *Barnes*, 570 F.3d at 1100–01 (footnote omitted). As in the District Court, "Plaintiffs appear to concede that the first two prongs apply and challenge only the third prong," *i.e.*, whether their claim is based on "information provided by another information content provider." ER9.

## I. Plaintiffs' Claim Is Based on Information Provided by Another Information Content Provider Because It Targets the Filter, a Content-Neutral Tool Protected by the CDA

The District Court correctly held that the third CDA prong is met because Plaintiffs' claim attempts to impose liability on Snap for allowing users to publish content through the Filter—a neutral tool that merely facilitates the creation of third-party content. This Court uniformly has held that those sorts of claims—those that target

"neutral tools" that facilitate user-to-user communications—are necessarily based on information provided by another information content provider and are therefore barred by the CDA.

## A. The Filter Is a Neutral Tool Protected by the CDA

As an initial matter, the District Court correctly held that Plaintiffs' "claim is barred under the [CDA] because the Speed Filter is a content neutral tool." ER2. As this Court has made clear, websites are "immune from liability" when a plaintiff challenges "functions" that are "content-neutral tools used to facilitate communications." *Dyroff*, 934 F.3d at 1096.

The District Court observed that the "Filter is essentially a speedometer tool, which allows [Snap] users to capture and share their speeds with others." ER13. The District Court also noted that the "Filter can be used at low or high speeds, and [Snap] does not require any user to [s]nap a high speed." ER13. Finally, the District Court explained that "while a user might use the Speed Filter to [s]nap a high number, the selection of this content (or number) appears to be entirely left to the user, and based on the warnings, capturing the speed while driving is in fact discouraged by [Snap]." ER13.

This Court repeatedly has held that the CDA protects "neutral tools," like the Filter, that "facilitate[] the expression of information by individual users." *Carafano*, 339 F.3d at 1124. Put another way, the CDA protects websites from liability when they provide users with tools that may be used for either "proper or improper purposes" and let users themselves decide if and how to use those tools. *Roommates*, 521 F.3d at 1168, 1172.

For example, in *Dyroff*, a plaintiff sued a message board website that allowed users to post on various topics. 934 F.3d at 1094–95. The website's features included permitting anonymous accounts, recommending particular content through algorithms, and notifying users of new content. *Id.* at 1095. The plaintiff sued the website after her son's heroin overdose. *Id.* The son had "posted in a heroin-related group," received "an email notification" of a response to his post, and "connected off the site" to purchase heroin. *Id.* This Court held that the website was "immune from liability under the CDA" because the website's challenged "functions, including recommendations and notifications, were content-neutral tools used to facilitate communications." *Id.* at 1096. The functions did not "require[]" users

"to disclose that they were looking for heroin or other illegal drugs," did not "ma[k]e suggestions regarding the content of potential user posts," and did not otherwise contribute "to the alleged unlawfulness of the content." *Id.* at 1099. Rather, the "recommendation and notification functions" merely "helped facilitate . . . user-to-user communication." *Id.* The functions were therefore neutral tools protected by the CDA.

*Roommates* similarly held that the CDA protects a website's provision of "*neutral* tools" that may be used to create "what *may* be unlawful" content. 521 F.3d at 1169 (second emphasis added). There, this Court held that the CDA protected a roommate-matching website's creation of a "blank text box" allowing users to express roommate preferences. The text box was protected by the CDA as a "neutral tool" because the content it solicited came "entirely from subscribers" and was "passively displayed" by the website, and the text box did not "*require*" users to input unlawful content. *Id.* at 1173–74 (emphasis added). The text box was therefore "precisely the kind of situation for which section 230 was designed to provide immunity." *Id.* at 1174.

Here, the District Court—looking to *Dyroff* and *Roommates*—correctly held that the "Filter is a neutral tool" entitled to CDA

- 23 -

protection. ER13. Like the notification and recommendation functions in *Dyroff* and the text box in *Roommates*, the Filter merely facilitates user-to-user communication in a neutral way. As the District Court observed, the Filter "is essentially a speedometer tool, which allows [Snapchat] users to capture and share their speeds with others." ER13. It "can be utilized for proper or improper purposes" and "at low or high speeds," and it "does not require any user to [s]nap a high speed." ER13. Nor does Snap "actually reward[]" users for sharing high-speed snaps. ER13. The District Court correctly held that the Filter is a neutral tool.

The District Court's holding is supported by the concessions in the Complaint about how the Filter operates. The Complaint makes clear that the Filter allows Snapchat users to create a photo or video "and overlay [their] speed onto [that] mobile photo or video." ER106 ¶ 25. The Complaint also shows that *users* decide whether to publish snaps using the Filter (or whether to publish snaps at all), ER106 ¶ 24, and that *users* decide whether to publish high-speed snaps. Snap simply provides a tool that facilitates users' communications about their speed—whether that speed is 0 m.p.h. (standing still), 30 m.p.h. (on a

ferry), or 500 m.p.h. (on a jet). There are a number of lawful and safe uses for the Filter.

The District Court's conclusion is also supported by well-settled law holding that similar tools—which take inputs from third-parties and display them in a new way—are neutral tools entitled to CDA protection. For example, in *Kimzey*, this Court held that Yelp was not responsible for an unflattering Yelp review based on its "star-rating system" because the system was "based on rating inputs from third parties" and merely "reduce[d] this information into a single, aggregate metric." 836 F.3d at 1269–70. The system was therefore "best characterized as the kind of 'neutral tool[]' operating on 'voluntary inputs' that . . . [does] not amount to content development." *Id.* at 1270 (citation omitted); *see also Gentry v. eBay, Inc.*, 99 Cal. App. 4th 816, 834 (2002) (eBay's "star symbol and 'Power Sellers' designation is simply a representation of the amount of such positive information received by other users of eBay's web site" and thus CDA-protected).

Likewise, in *Marshall's Locksmith Service Inc. v. Google, LLC*, 925 F.3d 1263, 1270–71 (D.C. Cir. 2019), the D.C. Circuit considered claims against Google based on its publication of allegedly misleading

locksmith advertisements. The plaintiffs alleged that Google was responsible for the advertisements because it used tools to create "map pinpoints that display scam-locksmith locations." *Id.* at 1269. But the D.C. Circuit held that Google's "translation of third-party information into map pinpoints does not convert [it] into [an] 'information content provider[]' because [it] use[d] a neutral algorithm to make that translation." *Id.* at 1270.

The same is true for the Filter. The Filter takes a voluntary third-party input (the user's speed) and converts it into a new format (text on a snap) that the user then decides to publish. That is no different than Google's translating a user-submitted address into a map pinpoint, or Yelp's translating user reviews into a star rating. The Filter is therefore a neutral tool, because it merely facilitates the publication of third-party content in a neutral way.

### B. Plaintiffs Cannot Circumvent the CDA By Targeting the Filter Itself

Plaintiffs do not address the District Court's straightforward holding that their "claim is barred under the [CDA] because the [Filter] is a content neutral tool." ER2. Indeed, they mention the term "neutral tools" just once, and they ignore *Dyroff*, even though that decision was

central to the District Court's analysis. Instead, Plaintiffs claim that the CDA does not apply because their claims directly challenge the Filter (rather than any content created using the Filter), and "Snap itself created the Speed Filter." AOB 22. But this Court consistently has rejected efforts, like Plaintiffs', to "plead around section 230 immunity" by targeting "tools meant to facilitate the communication and content of others." *Dyroff*, 934 F.3d at 1098; *see also Kimzey*, 836 F.3d at 1266 (rejecting "effort to circumvent the CDA's protections through 'creative' pleading"). Plaintiffs' effort to duck the CDA fails.

*Dyroff* is directly controlling. There, the plaintiff argued that the CDA did not apply because her claims were not targeting any specific third-party content; rather, she argued that her claims targeted the website's features—including its algorithmic content recommendations and post notifications—that "facilitated illegal drug sales." 934 F.3d at 1095–98. This Court rejected that argument. It held that in providing the challenged features, the website "was acting as a publisher of others' content," because the challenged website features were "tools meant to facilitate the communication and content of others. *They are not content in and of themselves*." *Id.* at 1098 (emphasis added). The

Court therefore dismissed the plaintiff's attempt to "fram[e] . . . website features as content" as an improper effort to "plead around Section 230 immunity." *Id.*

Likewise, in *Kimzey*, this Court rejected a plaintiff's effort to "plead around the CDA" by claiming to challenge Yelp's "unique star-rating system" which aggregated and reflected user review ratings, rather than challenging the underlying reviews themselves. 836 F.3d at 1269. This Court held that accepting this theory "would render the CDA's immunity provisions meaningless." *Id.* at 1266, 1269.

Similarly, in *Force v. Facebook*, 934 F.3d 53 (2d Cir. 2019), *cert. denied*, 140 S. Ct. 2761 (Mem.) (May 18, 2020), the plaintiffs—estates of individuals who died in terrorist attacks—sued Facebook for facilitating terrorism. Like Plaintiffs here, the *Force* plaintiffs argued that Facebook's algorithmic content and friend suggestion features "'develop' Hamas's content by directing such content to users who are most interested in Hamas and its terrorist activities." *Id.* at 68. But the court rejected this effort to plead around the CDA, holding that "plaintiffs' allegations about Facebook's conduct do not render it responsible for the Hamas-related content." *Id.* at 69.

No different from these cases, Plaintiffs here cannot avoid the CDA by purporting to target the Filter itself, because the Complaint's allegations make clear that the Filter is exactly the sort of communication-facilitating tool that is protected under the CDA. Plaintiffs' Complaint does not challenge the Filter alone (nor could it— the Filter is merely a neutral speedometer tool). Rather, the Complaint focuses entirely on the fact that the Filter allows users to *publish and share* particular content. ER104 ¶ 13 (focusing on impact of allowing users to "share [a] 100-MPH-[s]nap on Snapchat"). It is precisely this ability to *publish and share* that Plaintiffs contend "encourages" users to drive at unsafe speeds. ER13 ("[C]entral to Plaintiffs' claim is that users are using the Speed Filter to **capture and share** a 100-MPH or high number [s]nap, *i.e.*, to create user content."). To the extent that the Complaint targets the Filter, it thus does so based on the Filter's role in facilitating user-to-user communication. Plaintiffs' effort to target the Filter on that basis is therefore barred by the CDA, because the Filter is a "tool[] meant to facilitate the communication and content of others"; it is *"not content in and of"* itself for CDA purposes. *Dyroff*, 934 F.3d at 1098 (emphasis added).

Indeed, if a party could avoid the CDA by simply framing a claim as challenging a website's neutral, communication-facilitating tools, the CDA would be a dead letter. Parties could easily plead around the CDA by reframing their claims to target website features facilitating third-party content rather than the third-party content itself. Allowing that sort of reframing would, as *Kimzey* warned, "render the CDA's immunity provisions meaningless." *Kimzey*, 836 F.3d at 1269; *see also, e.g.*, *Black v. Google Inc.*, 2010 WL 3222147, at *3 (N.D. Cal. Aug. 13, 2010), *aff'd*, 457 F. App'x 622 (9th Cir. 2011) ("[S]everal courts have considered and rejected theories that an interactive computer service could be held liable merely because its programming facilitated the creation of the content at issue."). The District Court correctly avoided that result by rejecting Plaintiffs' effort to plead around the CDA by targeting a "neutral tool" like the Filter.[4]

---

[4] The District Court also correctly held that "CDA immunity applies even if Plaintiffs here were harmed by the users' conduct of speeding," rather than the snaps themselves, because the CDA "'applies even when the alleged harm actually resulted from conduct that occurred outside of the information exchanged.'" ER14 (quoting *Doe II v. MySpace Inc.*, 175 Cal. App. 4th 561, 573 (2009)). That holding is supported by years of consistent precedent applying the CDA to claims challenging the facilitation of third-party communications that result in offline harm. *Doe II*, 175 Cal. App. 4th at 573–74 (rejecting argument that CDA did

### C.    The Filter Does Not Render Snap Responsible for Users' Decisions to Publish High-Speed Snaps

Plaintiffs also argue that the District Court erred because even if the Filter merely facilitates the creation of content, Snap is a joint creator of snaps published using the Filter and is therefore an "information content provider" under the CDA.  AOB 20–22.

That, too, is wrong.  A party is an ""information content provider,'" when it is "'responsible, in whole or in part, for the creation or development of' the offending content'" at issue.  *Kimzey*, 836 F.3d at 1266 (quoting 47 U.S.C. § 230(f)(3)).  But a party does "not create content . . . in whole or in part" merely by providing "content-neutral tools used to facilitate communications."  *Dyroff*, 934 F.3d at 1096.  Rather, website tools facilitating third-party content render a website responsible for such content under the CDA only if they "require" unlawful content.  *Dyroff*, 934 F.3d at 1099 (CDA protected

---

not apply because harm "resulted from conduct that occurred outside of the information exchanged"); *Carafano*, 339 F.3d at 1122 (CDA applied to harm from harassing phone messages resulting from site's publication of fake profile); *Dyroff*, 934 F.3d at 1098 (CDA applied to overdose resulting from site's publication of user posts); *Doe v. MySpace, Inc.*, 528 F.3d 413, 416, 419 (5th Cir. 2008) (CDA applied to assault because claims were based "on MySpace's failure to implement basic safety measures").

recommendation and notification functions because they did not

"require[] users to post specific content"); *Roommates*, 521 F.3d at 1173

(CDA protected blank text box because it did not "*require*" unlawful

content (emphasis added)).  The Filter, as mentioned, "can be utilized

for both proper and improper purposes," "can be used at low or high

speeds," and "does *not require* any user to [s]nap a high speed," or even

post a snap using the Filter at all.  ER13 (emphasis added).  It therefore

does not render Snap a joint creator of snaps published using the Filter.

Plaintiffs nonetheless imply that Snap jointly created high-speed

snaps because the Filter somehow "encouraged" dangerous driving.

AOB 11.  That argument, too, is without merit.

To begin, the argument fails because as the District Court

correctly held, Plaintiffs' "encouragement" allegations are wholly

conclusory and were therefore properly disregarded.  ER13; ER31; *see*

*Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 740 (9th Cir. 2008)

(holding that conclusory allegations are "insufficient to overcome a

motion to dismiss").  In fact, judicially noticed facts demonstrate that

Snap expressly *discourages* taking snaps while driving.  *See supra* 8.

Further, even if the Court were to take Plaintiffs'
"encouragement" allegations at face value—*i.e.*, that the Filter might
have somehow "encouraged" users to create certain snaps using the
Filter—that does not eliminate CDA immunity.  As *Roommates* put it,
"[t]he fact that [a website] encourages subscribers to provide something
in response to [a] prompt is not enough to make it a 'develop[er]' of the
information"; the website must "requir[e] subscribers to provide
[unlawful] information" to be responsible for it under the CDA.
*Roommates*, 521 F.3d at 1166, 1174; *see also Jones v. Dirty World
Entm't Recordings LLC*, 755 F.3d 398, 414 (6th Cir. 2014) (citing
*Roommates* and rejecting "encouragement test of immunity under the
CDA"); *Daniel v. Armslist, LLC*, 926 N.W.2d 710, 718 (Wis. 2019) (CDA
barred claim challenging site's alleged "facilitation and encouragement
of illegal firearm sales by third parties").  Accordingly, "[i]n the Ninth
Circuit, 'if the alleged content provider is not a creator of the challenged
content, *it must have done more than merely "encourage[d]"* the creation
of the challenged [content]; the alleged provider must have *required*
another to create that content.'"  *La Park La Brea A LLC v. Airbnb,
Inc.*, 285 F. Supp. 3d 1097, 1107 (C.D. Cal. 2017) (citation omitted).

Plaintiffs do not (and cannot) allege that Snap *required* users to create and publish snaps displaying high speeds, or any speed at all. Plaintiffs therefore cannot establish that the Filter renders Snap a joint creator of high-speed snaps or makes Snap responsible for users' decisions to misuse the Filter in dangerous ways.

## D. Plaintiffs' Cited Authority Does Not Undermine the District Court's Sound Decision

Rather than engaging with the District Court's neutral tools analysis or this Court's decision in *Dyroff*, Plaintiffs instead rely on a series of inapposite cases, none of which undermine that the Filter is a neutral communication tool protected by the CDA.

Plaintiffs first rely on the Georgia Court of Appeals' decision in *Maynard v. Snapchat, Inc.*, 816 S.E.2d 77, 81 (Ga. Ct. App. 2018). AOB 20. *Maynard* involved a different car accident that was allegedly caused by the Filter. The *Maynard* plaintiffs alleged that the Filter caused the accident because the driver allegedly used the Filter while driving and tried (but failed) to publish a high-speed snap. *Id.* at 79. Plaintiffs claim *Maynard* supports them because the Georgia Court of Appeals held that the CDA did not apply in that case. But *Maynard*

does not help Plaintiffs, because it is readily distinguishable and, as the District Court correctly held, inconsistent with Ninth Circuit precedent.

To begin, *Maynard* made clear that key to its analysis was that no content was published at all in that case, as no snap was created or sent. The court's analysis repeatedly stressed that point. The court noted, for example, that "the Maynards do not seek to hold Snapchat liable for publishing a [s]nap by a third-party that utilized the Speed Filter." 816 S.E.2d at 81. The court also distinguished potentially applicable CDA cases because they did "not involve an incident where . . . no posts were made." *Id.* at 80. And the court reinforced its bottom-line holding by noting that "CDA immunity does not apply because there was *no third-party user content published*." *Id.* at 81.

The opposite is true here. Plaintiffs' Complaint points to a specific snap that a passenger, Brown, published shortly before the accident. ER112 ¶ 69 ("One 'Snap' captured the boys' speed at 123 miles per hour."). Further, beyond that individual snap, Plaintiffs' entire theory of liability rests on the fact that the Filter allows users to *publish and share* high-speed snaps on Snapchat, reinforcing Plaintiffs' publication-focused theory of liability. ER107 ¶ 33 (alleging Snap was negligent for

allowing users "to capture a mobile photo or video showing them hitting 100 MPH and then share the [s]nap with their friends"); ER107 ¶ 34 (alleging Snap was negligent because it allowed users to "share [a] 100-MPH-[s]nap on Snapchat"). For these reasons, unlike *Maynard*, Plaintiffs' Complaint focuses on third-party snaps posted on Snapchat.

Even apart from this distinction, *Maynard* is also not controlling because, as the District Court held, *Maynard* ignored "Ninth Circuit case law relating to the application of CDA immunity to 'neutral tools.'" ER15. Indeed, *Maynard* nowhere mentioned the term "neutral tools" and was decided before this Court in *Dyroff* reinforced that such tools are protected by the CDA. *Maynard*'s analysis, in allowing liability to be imposed based on the Filter, is inconsistent with Ninth Circuit decisions, like *Dyroff* and *Kimzey*, that prohibit "plead[ing] around" the CDA by challenging website features that facilitate the creation of third-party content. 934 F.3d at 1098; *supra* 27–28. *Maynard* therefore does not undermine the District Court's decision.[5]

---

[5] Plaintiffs also claim that *Maynard* demonstrates that this issue—whether Snap can be liable for accidents involving the Filter—"has already created substantial disagreement among judges across the country." AOB v. But there is no "substantial disagreement . . . across the country." Plaintiffs point to just two lawsuits involving the Filter—

Beyond *Maynard*, Plaintiffs also rely on a smattering of other CDA cases to argue the CDA does not apply. But the District Court acknowledged those cases and correctly deemed them inapplicable, because they involved claims against "website operators when '[*they*] created the tortious content,'" ER12, rather than claims based on a website operator merely providing neutral tools facilitating the creation of content by users.

**Roommates.** Plaintiffs first erroneously claim that a portion of *Roommates* establishes that the CDA does not apply. AOB 13. In *Roommates*, this Court considered housing discrimination claims against a roommate-matching website. *Roommates*, 521 F.3d at 1164. One of the plaintiff's claims alleged that the website unlawfully asked potential users discriminatory questions, such as "sex, family status and sexual orientation." *Id.* The Court held the CDA did not apply to that claim because the website "created the questions and choice of

---

this case and *Maynard*—both of which involve the same plaintiffs' counsel. That does not show a widespread issue. Moreover, the *Maynard* trial court on remand ultimately dismissed the plaintiffs' claims with prejudice on state-law causation and duty grounds, rendering any dispute concerning the CDA's applicability little more than academic. *Maynard v. McGee*, 2019 WL 6216230, at *1 (Ga. Super. Ct. Nov. 8, 2019); *see infra* 50.

answers," and there was "a plausible claim that [the website] violated state and federal law *by merely posing the questions*." *Id.* (emphasis added). Put another way, because the *questions alone* were unlawful, and the website created the questions, the CDA did not apply.

Here, the opposite is true. Unlike the questions posed in *Roommates*, which were the website's own content and were unlawful on their own, the Filter is a tool that third parties use to create and publish *their* own content and is not inherently unlawful. The illegality arises, if at all, from *users* creating and publishing high-speed snaps using the Filter. ER104 ¶ 13; ER107 ¶¶ 33, 34; ER108 ¶ 38. Because Snapchat users are responsible for those snaps—and because Snap's role was limited to providing a "neutral tool" to facilitate such snaps (*see supra* 21–26)—the CDA applies.

**District Court Cases.** Plaintiffs also rely on a smattering of district court cases involving efforts to hold websites liable for content they independently created. AOB 16–17. Those cases do not apply for the same reason: They all involved situations in which liability stemmed from a website's *own content*, rather than (as here) the development of a neutral tool (like the Filter) that allows users to create

content. For example, in *Anthony v. Yahoo Inc.*, 421 F. Supp. 2d 1257, 1262–63 (N.D. Cal. 2006), the CDA did not apply because Yahoo allegedly "*create*[*d*] [the] false profiles" on which a plaintiff's claims were based. Along similar lines, in *Fraley v. Facebook, Inc.*, 830 F. Supp. 2d 785, 802 (N.D. Cal. 2011), the CDA did not apply because Facebook allegedly "create[d] [the] content" underlying the plaintiffs' claims by "deceptively mistranslating [users'] actions" into misleading ads. The remaining cases on which Plaintiffs rely are similar—they all involved claims that were based on website-created content or non-publication-related activity, rather than neutral tools like the Filter that facilitate the publication of content. *See Icon Health & Fitness, Inc. v. Consumer Affairs.com*, 2017 WL 2728413, at *4 (D. Utah June 23, 2017) (CDA did not apply because website "developed or created" the content on which liability was based, including by "changing the order of certain words" of reviews); *Airbnb, Inc. v. City & Cnty. of S.F.*, 217 F. Supp. 3d 1066, 1072–73 (N.D. Cal. 2016) (CDA did not apply because ordinance regulated payment processing and booking services and did not "regulate what can or cannot be said or posted" and imposed "no obligation . . . to monitor, edit, withdraw or block the content"); *Ascend*

*Health Corp. v. Wells*, 2013 WL 1010589, at *8 (E.D.N.C. Mar. 14, 2013)

(CDA did not apply because plaintiff "allege[d] that [defendant] herself

created some of the defamatory statements on her blog"); *Opperman v.*

*Path, Inc.*, 87 F. Supp. 3d 1018, 1044–45 (N.D. Cal. 2014) (CDA did not

apply because claims were based on guidelines that Apple drafted).

Here, the opposite is true. The alleged illegality does not arise

from content that Snap itself created—*i.e.*, from the Filter alone. Nor

could it—the Filter, on its own, is a neutral tool akin to a speedometer

in a car. Instead, as the District Court correctly held, the alleged

illegality arises from the ability of users to create high-speed snaps

using the Filter, which are published by Snap users. ER13. Snap's only

role with respect to those snaps is providing a neutral, CDA-protected

communication tool.

**Internet Brands.** Finally, Plaintiffs point to this Court's decision

in *Doe v. Internet Brands, Inc.*, 824 F.3d 846, 850–51 (9th Cir. 2016).

But that decision is even further afield. There, the plaintiff alleged that

two rapists used a website owned by Internet Brands to lure her to a

fake audition and sexually assault her, and that Internet Brands "knew

about the rapists but did not warn her or the website's other users." *Id.*

at 848.  This Court considered whether it was "inconsistent with [the CDA] for the State of California to require an interactive computer service provider to warn its users about the threat of a known sexual predator."  *Id.* at 850–51.  On those facts, this Court concluded that Section 230 did not bar the failure-to-warn claim, because the claim had nothing to do with *any* content on the website.  In particular, the plaintiff did *not* allege that the predators posted "anything to the website" or communicated with the plaintiff through the website, or that the website's alleged knowledge of the threat posed by the predators was derived from any third-party content on the website.  *Id.* at 851.  Nor did she claim "to have been lured by any posting that Internet Brands failed to remove" from the website.  *Id.*  The duty-to-warn claims would therefore "not require Internet Brands to remove any user content or otherwise affect how it publishes or monitors such content."  *Id.*

Here, the District Court correctly held that the opposite is true—Plaintiffs *are* "seeking to hold [Snap] responsible for failing to regulate what the users post through the Speed Filter" because they claim "if the users were not motivated to capture their high speeds for content, they

would not speed." ER13. Unlike *Internet Brands*, Plaintiffs' claim therefore *would* "affect how [Snap] publishes" content—exactly what the CDA prohibits. Courts have rejected similar misguided efforts to use *Internet Brands* to duck the CDA. *See, e.g.*, *Herrick v. Grindr, LLC*, 306 F. Supp. 3d 579, 592 (S.D.N.Y. 2018), *aff'd*, 765 F. App'x 586 (2d Cir. 2019) (*Internet Brands* not applicable to claims implicating app's "publishing functions"); *Fields v. Twitter, Inc.*, 217 F. Supp. 3d 1116, 1126 (N.D. Cal. 2016) (*Internet Brands* not applicable to claims that "would significantly affect Twitter's monitoring and publication of third-party content").

Thus, because the Complaint focuses on Snap's creation of the Filter—a content-neutral tool—Plaintiffs cannot use *Internet Brands*, *Roommates*, or the cited district court decisions to circumvent the CDA. These cases do not change that Snap's only alleged negligence is based on its provision of a neutral communication tool that facilitates users' creation and publication of content. This Court has uniformly held that claims seeking to impose liability for the provision of such tools are preempted by the CDA.

## II.     The Remaining Requirements for CDA Immunity Are Met

The remaining requirements for CDA immunity are also met.

Because Plaintiffs "concede[d] that the first two prongs apply" in the

District Court—and do not contest the District Court's concession ruling

here—they have waived any argument otherwise.  ER9 ("As before,

Plaintiffs appear to concede that the first two prongs apply and only

challenge the third prong."); *see also Toledano*, 317 F.3d at 948 (when

party does not "challenge the district court's conclusion that [an]

argument was waived," this Court "need not address [that argument] on

the merits"); *Monetary II Ltd. P'ship v. C.I.R.*, 47 F.3d 342, 347 (9th Cir.

1995) (appellate courts generally "will not consider arguments which

were not first raised before the district court").  Snap nonetheless

briefly addresses the first and second prongs.

### A.     Snap Is an Interactive Computer Service Provider

Plaintiffs do not dispute that Snap is a provider of an interactive

computer service.  Courts repeatedly have held that online platforms

allowing users to communicate are "interactive computer services."  *See,*

*e.g.*, *Herrick*, 306 F. Supp. 3d at 588–89 (holding CDA applied to

Grindr's "social-networking platform accessed through a smart phone

app").  The Complaint demonstrates that is the case here.  It alleges

that "Snap's products allow users to create, upload, post, send, receive, share, and store digital content." ER106 ¶ 24. Courts also have accepted without dispute that Snapchat is an interactive computer service protected by the CDA. *E.g., Grossman v. Rockaway Twp.*, 2019 WL 2649153, at *14 (N.J. Super. Ct. June 10, 2019).

### B. Plaintiffs' Claim Treats Snap as a Publisher

Plaintiffs' claim also seeks to hold Snap liable based on its role as a publisher. In applying this prong, "courts must ask whether the duty that the plaintiff alleges the defendant violated derives from the defendant's status or conduct as a 'publisher or speaker.'" *Barnes*, 570 F.3d at 1102. That is the case when a claim targets "the 'exercise of a publisher's traditional editorial functions—such as deciding whether to publish, withdraw, postpone or alter content.'" *Batzel v. Smith*, 333 F.3d 1018, 1031 n.18 (9th Cir. 2003). Courts also have held that "choices about what content can appear on [a platform] and in what form, are editorial choices that fall within the purview of traditional publisher functions," as are "decisions about how to treat postings." *Jane Doe No. 1 v. Backpage.com, LLC*, 817 F.3d 12, 21 (1st Cir. 2016).

The District Court correctly held that Plaintiffs' claim rests on exactly those types of publication decisions, because "central to Plaintiffs' claim is that the users are using the Speed Filter to ***capture and share*** a 100-MPH or higher [s]nap, *i.e.*, to create user content." ER13 (emphasis in original). Put another way, "Plaintiffs are seeking to hold [Snap] responsible for failing to regulate what users post through the Speed Filter." ER13. Indeed, the Complaint focuses on Snap allowing users to share (*i.e.*, publish) particular content—snaps reflecting their speeds—on Snapchat. The Complaint alleges, for example, that Snap negligently allows users to "share, on social media, [a] mobile photo or video with their real-life speed as a '[s]nap.'" ER106 ¶ 26. The Complaint also alleges that Snapchat users are "motivated to drive at an excessive speed to obtain recognition and *to share [their] speed through Snapchat*." ER110 ¶ 53 (emphasis added). And the Complaint claims that Snap was negligent because its users "want to use the Snapchat [Filter] to capture a mobile photo or video showing them hitting 100 MPH *and then share the [s]nap*." ER107 ¶ 33 (emphasis added); *see also id*. ¶ 34 ("This is a game for Snap and many of its users . . . . Go as fast as you can until you hit 100 MPH, Snap a

photo or video, *and then share the 100-MPH-[s]nap on Snapchat.*"
(emphasis added)).  The Complaint therefore seeks to impose liability
on Snap for Snap's "choices about what content can appear on [the app]
and in what form"—a core protected publisher function.  *Backpage*, 817
F.3d at 21.

Plaintiffs imply that their claim does not treat Snap as a publisher
because it stems from Snap's "creat[ion of] the Snapchat Speed Filter"
rather than from Snap's publication of third-party content.  AOB 10.
But that argument is not supported by the Complaint and fails for the
same reasons discussed above.  The Complaint does not allege that the
Filter alone causes dangerous driving.  Instead, it repeatedly claims
that the danger arises from the ability to *publish snaps* using the Filter.
ER107 ¶¶ 33, 34.  The alleged "encouragement" of speeding would not
exist if the Filter merely allowed users to see their own speed; the
"encouragement" allegedly arises from the ability of users to publish
and communicate that speed to others.  The "duty that [Plaintiffs]
allege[] [Snap] violated" therefore "derives from" Snap's allowing the
publication of snaps using the Filter.  *Barnes*, 570 F.3d at 1102.  That is
exactly the sort of publication act to which CDA immunity applies.

## III. Plaintiffs' Claim Separately Fails for Lack of Causation

Plaintiffs' negligence claim also fails for a separate reason that provides an independent basis for affirmance—Plaintiffs cannot establish that Snap's actions were the legal cause of the accident. The District Court did not reach this issue in ruling on Snap's motion to dismiss the amended complaint. ER15. But the District Court dismissed Plaintiffs' original complaint on that basis, holding that Plaintiffs failed to "allege[] sufficient facts to establish that [Snap] actually encouraged speeding" and thus did not "sufficiently allege[] a causal connection" between the accident and the Filter. ER29–31. Plaintiffs did not add any allegations to undermine that holding when they amended their complaint, and Plaintiffs' claim still fails for lack of causation. This Court may affirm on that basis. *Hell's Angels*, 360 F.3d at 933 ("We may affirm on any basis finding support in the record.").

The District Court's causation dismissal was based on years of well-settled precedent holding that device manufacturers and app developers are not the cause of an accident merely because a driver allegedly misused a product or app while driving. *E.g.*, *Modisette*, 30 Cal. App. 5th at 136; *Meador v. Apple, Inc.*, 911 F.3d 260, 263 (5th Cir.

2018); *Durkee v. C.H. Robinson Worldwide, Inc.*, 765 F. Supp. 2d 742, 745 (W.D.N.C. 2011), *aff'd* 502 F. App'x 326 (4th Cir. 2013); *Coal. Against Distracted Driving v. Apple, Inc.*, 2018 WL 2016665, at *5 (Cal. Ct. App. May 1, 2018); *Williams v. Cingular Wireless*, 809 N.E.2d 473, 478 (Ind. Ct. App. 2004); *Estate of Doyle v. Sprint/Nextel Corp.*, 248 P.3d 947, 952 (Okla. Civ. App. 2010). Rather, it is the driver's responsibility to drive safely, and it is the driver's conduct that causes such accidents.

*Modisette* is instructive. There, a driver crashed while using Apple's "FaceTime" app while driving, causing injuries to third parties. 30 Cal. App. 5th at 139.[6] The plaintiffs alleged that FaceTime caused the accident because it was "addictive" and resulted in "compulsive" behavior, especially "among young adults." *See id.* at 147 n.9, 151. But the California Court of Appeal affirmed dismissal, holding that it "was [the driver's] conduct of utilizing FaceTime while driving at highway speed that directly placed the [plaintiffs] in danger," and thus the

---

[6] In the District Court, "both parties agreed" that the two potentially applicable bodies of law—California law (where Snap is based) or Wisconsin law (where the accident occurred)—are substantially similar for purposes of analyzing causation. ER26. *Modisette*, as a California case, therefore provides the controlling causation framework.

plaintiffs' injuries "were not a result of Apple's conduct." *Id.* at 147, 154. "Rather, [the driver] caused the [plaintiffs'] injuries when he crashed into their car while he willingly diverted his attention from the highway." *Id.*

Similarly, in *Meador*, 911 F.3d at 263, the plaintiffs alleged that the iPhone's design was a substantial factor in causing an accident because the receipt of text messages "triggers in the recipient 'an unconscious and automatic, neurobiological compulsion to engage in texting behavior.'" *Id.* The Fifth Circuit rejected that argument, holding that the law "places the onus of distracted driving on the driver alone," and "decline[d] to consider 'neurobiological compulsion' a substantial factor" in causing the accident. *Id.* at 267. In short, these courts and many others have held that the reckless driver is the sole legal cause of an accident, even when a device or app might have played some conceivable role.[7] Plaintiffs have never pointed to a single case holding otherwise.

---

[7] *See also Durkee*, 765 F. Supp. 2d at 750 (holding that in-truck texting system was not cause of accident because "[t]he alleged accident in this case was caused by the driver's inattention, not any element of the design or manufacture of the system that has been alleged"); *Coal. Against Distracted Driving*, 2018 WL 2016665, at *5 (holding

In light of these authorities, in *Maynard*—which Plaintiffs rely on for its CDA ruling—the trial court ultimately dismissed claims similar to Plaintiffs' here, based on the Filter, for lack of causation. *Maynard*, 2019 WL 6216230, at *1. There, a driver allegedly crashed into another vehicle while attempting to take a high-speed snap. *Id.* The injured party claimed Snap was to blame because the Filter "encouraged" speeding. *Id.* But the court held that the Filter did not cause the accident, notwithstanding the plaintiffs' "encouragement" allegations, because the responsibility for reckless driving "is on the driver, even in the face of allegations that the product or application 'encouraged' the misuse." *Id.* at *5–7. The Filter therefore was not the legal cause of the accident.[8]

---

"[s]martphones and smartwatches were not the cause of the accidents"; rather, "[d]rivers engaged in conduct prohibited by law were the cause of [the] accidents" and "[t]here is no valid ground on which to hold defendants liable for the poor choices drivers make"); *Williams*, 809 N.E.2d at 478 ("A cellular phone does not cause a driver to wreck a car. Rather, it is the driver's inattention while using the phone that may cause an accident."); *Estate of Doyle*, 248 P.3d at 952 ("[I]t is every driver's duty to use ordinary care while driving.").

[8] Plaintiffs relied on three cases to argue otherwise in the District Court—*Weirum v. RKO Gen., Inc.*, 15 Cal. 3d 40, 48 (1975), *Cobb v. Indian Springs, Inc.*, 522 S.W.2d 383, 387–88 (Ark. 1975), and *Shafer v. Keeley Ice Cream Co.*, 234 P. 300, 303 (Utah 1925). But the District Court explicitly rejected Plaintiffs' effort to rely on *Weirum*, ER31, and

Consistent with all of these cases, the District Court correctly held that the Filter was not the legal cause of the accident here. ER31. As discussed above, the Filter is a neutral speedometer that allows a user to record and share his or her speed on Snapchat. It can be used in many safe contexts, including while on a plane or while jogging. There is no allegation, nor could there be, that Snap rewards users for taking snaps at high speeds while driving, instructs users to "go faster," or does anything else to encourage reckless driving. To the contrary, Snap specifically and repeatedly warns users *not* to use the Filter while driving. ER23. As in *Maynard* and the many cases that preceded it,

---

both other cases are also readily distinguishable. All three cases involved explicit encouragement of unlawful behavior, rather than the sort of vague, implicit encouragement on which Plaintiffs rely (and which the District Court and other courts have deemed insufficient). *Weirum*, 15 Cal. 3d at 48 (causation adequately alleged because defendant radio broadcaster "generate[d] a competitive pursuit on public streets, accelerated by repeated importuning by radio to be the very first to arrive at a particular destination"); *Cobb*, 522 S.W.2d at 387 (causation adequately alleged where defendant explicitly encouraged the driver to "show everybody what his automobile could do in the way of speed"); *Shafer*, 234 P. at 302–03 (causation adequately alleged because party encouraged "young boys" to rush through a crowd by throwing candy just beyond their reach, thereby creating a race to grab the candy).

Plaintiffs therefore cannot establish that the Filter was the legal cause of the accident.

Accordingly, Plaintiffs' claim also fails for lack of causation, and the District Court may be affirmed on that alternative ground.

## CONCLUSION

The judgment of the District Court should be affirmed.

Respectfully submitted,

Dated: September 25, 2020        */s/ Jonathan H. Blavin*

JONATHAN H. BLAVIN
ROSEMARIE T. RING
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, California 94105
(415) 512-4000
Jonathan.Blavin@mto.com
Rose.Ring@mto.com

JOHN B. MAJOR
ANNE K. CONLEY
MUNGER, TOLLES & OLSON LLP
350 S. Grand Ave., 50th Floor
Los Angeles, California 90071
(213) 683-9100
John.Major@mto.com
Anne.Conley@mto.com

*Counsel for Defendant-Appellee Snap Inc.*

- 52 -

## STATEMENT OF RELATED CASES

Snap Inc. is not aware of any related cases that are currently pending in this Court.

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** 20-55295

I am the attorney or self-represented party.

**This brief contains 10,414 words,** excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[X] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties;
    [ ] a party or parties are filing a single brief in response to multiple briefs; or
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature:** */s/ Jonathan H. Blavin*       **Date:** September 25, 2020